A01A1350. IN THE INTEREST OF K. S., a child.
(552 SE2d 441)

ELDRIDGE, Judge.

Upon the consent of the appellant biological father and the biological mother, the child, K. S., was first adjudicated deprived in June 1998 following a detention hearing conducted in the Juvenile Court of Cobb County. K. S. was then age three. Her parents had been divorced on February 3, 1997, approximately a year and a half earlier. Upon the parents' consent, the juvenile court placed K. S. and her older sister by another father in the temporary custody of their maternal grandfather, finding as fact that the children had been placed in the protective custody of the Cobb County Police Department and that the parents' history with the county Department of Family & Children Services (DFCS) included:

> the mother's substance abuse, lack of supervision of the children, the children not being kept clean, the children having untreated head lice and fleas, the home being kept in an unhealthy condition, and numerous police involvement [sic] between the parents including but not limited to the mother's recent allegation of being raped by the [father].

After a custody hearing in June 1998, the juvenile court ordered the temporary custody of the children given the grandfather extended for a period of not more than two years and again adjudicated the children deprived. The court's order also directed that the parents undergo drug and alcohol evaluation and treatment, as appropriate, and participate in parenting classes and that the appellant complete a DFCS-approved domestic violence program. In July 2000, ruling upon DFCS's petition for termination of the parents' rights to the children which was filed in late 1999, the juvenile court terminated the parental rights of the father of K. S.'s older sister and, over the objection of the children's court-appointed guardian ad litem, the appellant's parental rights to K. S. Upon the agreement of the parties, the juvenile court denied the termination petition as to K. S.'s mother[1] and placed the physical and permanent custody of the children in the maternal grandfather until the eighteenth birthday of each child.

On appeal, appellant contends that insufficient evidence was presented to support the juvenile court's finding that termination of

---

[1] The juvenile court denied the petition to terminate the mother's parental rights to K. S. finding: (a) that the parties agreed that there be no reunification plan; and (b) that the termination of the mother's parental rights was not in the best interests of the children because there existed the possibility of a future relationship between the mother and the children outside of family reunification.

his parental rights was proper upon clear and convincing evidence of parental misconduct and as in the best interest of the child. He argues that the juvenile court erred in adjudicating the child deprived as to him for want of evidence showing that he caused such deprivation. Alternatively, he argues that the juvenile court erred in terminating his parental rights by its failure to find that the child's deprivation is likely to continue or will not be remedied in the future, no current misconduct or neglect on his part having been shown.

Parental rights are terminated under OCGA § 15-11-94[2] by a two-step procedure.

> First, the court determines whether there is clear and convincing evidence of parental misconduct or inability. Second, the court considers whether termination is in the best interest of the child. The standard for appellate review of a termination of parental rights is whether a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights had been lost.

(Citations and punctuation omitted.) *In the Interest of D. I. W.*, 215 Ga. App. 644, 645 (1) (451 SE2d 804) (1994).

Parental misconduct or inability is determined upon the findings that the child is deprived; that the deprivation is the result of a lack of proper parental care or control; that the child's condition as deprived is likely to continue or will not be remedied; and that a continuing deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A). The physical, mental, or emotional neglect of a child, past or present, is among the factors relevant to a child as lacking proper parental control. OCGA § 15-11-94 (b) (4) (B) (v).

The appellant's argument to the contrary notwithstanding, the status of the child as deprived has been established by his failure to appeal such determinations. See *In the Interest of B. P.*, 207 Ga. App. 242, 244 (427 SE2d 593) (1993) (unappealed deprivation determination binding on appeal). The evidence presented showed that the appellant was incarcerated on a near continuous basis for writing bad checks in the three years that preceded the June 1998 termination hearing. While at the termination hearing below the appellant conceded that he has not been a good parent, he does not directly acknowledge on record that his time in confinement adversely affected the child. It is well settled that incarceration alone need not always require the termination of parental rights; however, incarceration will support such a ruling in the presence of sufficient aggra-

---

[2] This Code section was formerly OCGA § 15-11-81.

vating circumstances. *In the Interest of L. F.*, 203 Ga. App. 522 (417 SE2d 344) (1992). "[R]epetitive incarcerations for the commission of criminal offenses . . . constitute[ ] an additional factor which may be considered in determining whether the child presently is without the proper parental care and control of the offending parent, and that such is likely to continue." (Citations, punctuation and emphasis omitted.) *In the Interest of D. A. P.*, 234 Ga. App. 257, 259 (2) (506 SE2d 438) (1998). We conclude that appellant's almost continuous incarceration and the fact that he remained incarcerated through the termination hearing constitute an aggravating circumstance in this case.

Further, the testimony of a licensed psychologist established that both the children had been "incredibly traumatized" by the appellant's violence toward the mother in their presence when very young.[3] Asked if she could recommend that the appellant be permitted any contact with K. S. in the future, the psychologist opined, "[A]ny contact with him or even the mention of his name is not going to be good for [K. S.]"[4] The psychologist had earlier testified that "with [K. S.], just the mention of the mother's name brings back such traumatic memories about [the appellant] that she can't stop shaking at school."

The psychologist otherwise testified that K. S. remained angry with the appellant for memories of the appellant "leaving [the children] locked up for hours uncared for" during times of the mother's absence before the parents' divorce. The appellant conceded only that there had been occasions when he had locked the children behind a baby gate. "Parental unfitness supporting a termination of parental rights can be caused either by intentional or unintentional misconduct resulting in abuse or neglect of the child or by what is tantamount to physical or mental incapacity to care for the child." (Citations and punctuation omitted.) *In the Interest of M. C. A. B.*, 207 Ga. App. 325, 326 (427 SE2d 824) (1993).

Since K. S. was not in the custody of the appellant at the time his parental rights were terminated, the juvenile court was also required to determine whether the appellant failed to comply with OCGA § 15-11-94 (b) (4) (C) (i)-(iii) — this upon a consideration of whether, without substantial justification before the termination petition was filed for one year or longer, the appellant failed significantly: "(i) [t]o develop and maintain a parental bond with the child in a meaning-

---

[3] The father conceded as much on cross-examination. Asked if he had traumatized the children, the appellant responded, "If by saying arguing and screaming and fussing between me and [their mother] in front of them, yes. That's something I should have never done."

[4] The psychologist explained that she was recommending that there be no contact with the father, inclusive of letters, photographs, and telephone calls.

ful, supportive[, parental] manner; (ii) [t]o provide for the care and support of the child as required by law or judicial decree; and (iii) [t]o comply with a court ordered plan designed to reunite the child with the [appellant]." Id.

The record reflects that the appellant provided no support for K. S. after the children were placed in the temporary custody of the maternal grandfather[5] — this notwithstanding the fact that he had provided some child support to the mother for another daughter born to the couple out of wedlock in August 1999. Moreover, there also was evidence that the appellant, permitted to serve an August 1999 sentence to confinement in a diversion center upon being held in contempt of court for the nonpayment of child support, requested that he be returned to the Douglas County jail — this after being cited for a violation of the diversion center's rules which would have extended the time he would have served there. Such request was granted, foreclosing work opportunities which would have enabled the appellant to provide child support as he had been ordered to do. Although the appellant testified to the contrary, there also was evidence, and the juvenile court found, that the appellant failed to report for drug and alcohol evaluation and treatment in accordance with the juvenile court's reunification plan ordered as a result of the court's June 8, 1998 custody hearing. The appellant visited K. S. seven to eight times after the June 1998 custody hearing; however, these visits neither fostered an improved relationship with K. S. nor demonstrated a capacity for parenting in the appellant who on one visit to the children left K. S. vomiting from, in the maternal grandfather's words, "jerking her around, spinning her and everything." When reminded to avoid the foregoing on a subsequent visit to the children, the maternal grandfather ordered the appellant to leave when he became loud and abusive. The appellant did not seek leave of the juvenile court to visit with the children in the year preceding the termination hearing.

Although the appellant testified at the termination hearing that he could comply with anything the court might order him to do to resume "some type of communication with K. S.[,]"[6] this claim amounts to no more than conjecture. " '[T]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact.' " *In the Interest of D. I. W.*, supra at 646 (1).

Upon considering the best interest of the child, the juvenile court was further authorized to consider K. S.'s need for stability and the

---

[5] The maternal grandfather described the appellant as telling him he would "never get one dime of child support" and as having "kept his promise."

[6] The appellant asked the juvenile court not to terminate his parental rights to K. S. but did not seek custody of her.

harmful effects of prolonged foster care. *In the Interest of D. I. W.,* supra. After reviewing the evidence in the light most favorable to the appellant, we conclude that any rational trier of fact could have found by clear and convincing evidence that the appellant's parental rights were properly forfeited in the circumstances of this case. *In the Interest of L. F.,* supra.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED JULY 3, 2001.

*Alembik, Fine & Callner, Brenda Godfrey, Bobby G. Adkins, Jr.,* for appellant.

*Douglas D. Middleton, Pamela K. Hecht,* for appellee.