586 S.E.2d 423 (2003)
262 Ga. App. 744
In the Interest of K. W. et al., children.
No. A03A1888.
Court of Appeals of Georgia.
August 13, 2003.
*424 Gregory A. Voyles, for appellant.
Thurbert E. Baker, Atty. Gen., William C. Joy, Sr. Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., Charles R. Reddick, for appellee.
ELDRIDGE, Judge.
The father of K.W. and D.W. appeals from the January 16, 2003 order of the Juvenile Court of Lowndes County terminating his parental rights, contending that the evidence was insufficient to support the trial court's order. Finding no error, we affirm.

*425 On appeal, we must view the evidence in a light most favorable to the juvenile court's order and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated. We do not weigh the evidence and must defer to the trial judge as the factfinder.
(Citations and punctuation omitted.) In the Interest of K.A.C., 229 Ga.App. 254, 255(3), 493 S.E.2d 645 (1997).
Viewed in this light, the evidence shows that K.W. was born on February 19, 1994, and D.W. was born on April 13, 1995. At the time of the children's birth, the father was not married to the mother, but was living in the same household. The father was not listed as either child's father on their respective birth certificates. In 1999, the father married the children's mother.
In May 2000, the mother contacted the Department of Family and Children Services ("DFACS"), stating that she was overwhelmed and was physically and mentally unable to care for the children. The mother further stated that she had been evicted from her home and had no place to live. She refused to return to the New Horizons homeless shelter where she and the children were residing. The mother told DFACS that she had contacted the father and that he was unable to care for the children. At this time, the father was no longer living with the mother and the children. However, he was employed full-time. The children came into DFACS custody on May 25, 2000.
When the father discovered that the children were in DFACS custody, he and the paternal grandmother contacted DFACS and indicated a desire to have custody of the children. At that time, DFACS was unable to make the determination that the father was the legal father of the children and instructed him that he would have to legitimate the children. The father agreed to pursue legitimation.
Initially, the father remained in contact with DFACS. However, in December 2000, all contact stopped. On August 31, 2001, a petition to terminate the parental rights of the mother, the father, an alleged putative father of D.W., and any potential unknown biological fathers of the children was filed. Initially, DFACS was unable to locate the father. However, in April and May 2002, the father wrote DFACS two letters stating that he was incarcerated. The mother's parental rights were terminated on May 2, 2002, after she testified in open court that she was desirous of voluntarily relinquishing her parental rights to the children as she was unable to provide for their needs. Rights of an alleged putative father of D.W., as well as any unnamed fathers of both children, were terminated on September 3, 2002. The father's parental rights were terminated by order dated December 17, 2002, and filed on January 16, 2003. Held:
The evidence presented amply supports the juvenile court's decision to terminate the father's parental rights to K.W. and D.W.
The termination of parental rights under OCGA § 15-11-94 involves a two-step analysis.
First, the juvenile court must determine whether there is [present] clear and convincing evidence of parental misconduct or inability, as defined in OCGA § 15-11-94(b). Parental misconduct is found when the child is deprived, the cause of the deprivation is lack of proper parental care or control, the cause of the deprivation is likely to continue or will not likely be remedied, and the continued deprivation will cause or is likely to cause serious harm to the child.[1] Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, it must consider whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.[2]
(Footnotes omitted.) In the Interest of J.J.W., 247 Ga.App. 804, 545 S.E.2d 21 (2001).
*426 1. (a) The trial court's order of June 13, 2000, found the children to be deprived. As the father "did not appeal the original order of the juvenile court finding that [K.W. and D.W.] were deprived, [he] cannot now complain about that finding." (Citation and punctuation omitted.) In the Interest of N.J. W., 233 Ga.App. 130, 133(1)(a), 503 S.E.2d 366 (1998). Such unappealed deprivation order establishes that K.W. and D.W. are deprived within the meaning of OCGA § 15-11-94(b)(4)(A)(i). See In the Interest of A. W., 240 Ga.App. 259, 262, 523 S.E.2d 88 (1999).
(b) Further, the juvenile court had sufficient evidence to determine that the father's inability to adequately care for K.W. and D.W. was the cause of their deprivation. In determining if the children lack parental care or control, the court shall consider the various factors established by OCGA § 15-11-94(b)(4)(B) and (C). OCGA § 15-11-94(b)(4)(B)(iii) provides that the court shall consider the "[c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship." The record shows that at the time of the termination hearing, the father was incarcerated for possession of marijuana with the intent to distribute for which he was found guilty and was sentenced on May 13, 2002, to eight years, with four years to be served in prison. His earliest expected parole date is August 2003.[3] "Although incarceration alone need not always compel the termination of parental rights, it can support such a ruling when sufficient aggravating circumstances are present." (Footnote omitted.) In the Interest of B.A.S., 254 Ga.App. 430, 435(3), 563 S.E.2d 141 (2002). These aggravating circumstances may include, in addition to a history of incarcerations for repeated offenses, "whether the incarcerated parent has made an effort to communicate with the child and, despite imprisonment, maintain a parental bond in a meaningful, supportive[,] and parental manner." (Punctuation and footnote omitted.) Stills v. Johnson, 272 Ga. 645, 651 (3), 533 S.E.2d 695 (2000). The father has not communicated with the children in any manner since his imprisonment.
Since K.W. and D.W. are not in the custody of the father, in determining if they are without proper parental care and control, the juvenile court was also required to determine whether the appellant failed to comply with OCGA § 15-11-94(b)(4)(C)(i)-(iii), which requires a consideration of whether, without substantial justification, for a period of one year or longer prior to the filing of the termination petition, the father failed significantly: "(i) [t]o develop and maintain a parental bond with the child in a meaningful, supportive[, parental] manner; (ii) [t]o provide for the care and support of the child as required by law or judicial decree; and (iii) [t]o comply with a court ordered plan designed to reunite the child with the [appellant]." Id.
The record shows that the father has not consistently paid child support for the children and has paid no child support since November 2001, more than one year prior to the termination hearing. A worker from Maximus Child Support Services testified that the father's payment history was "scant." A consent order was entered in September 1994, requiring the father, starting in November 1994, to pay child support for the children in the amount of $93.92 per month. The father made no payments in 1994 and 1995. In 1996 he made only one payment. In 1997, no payments were made by the father, and in 1998, only two payments were made. In 1999, the father made nine payments, but only one was for the full amount; the remainder were partial payments. In 2000, the father made 12 payments. However, only one was for the full amount and one payment was an income tax refund intercept. In 2001, the father made *427 eleven payments; three were for the full amount and the remainder were for partial amounts. Payments ceased after November 2001, when the father was incarcerated. At the time of the termination hearing, the father was in arrears $7,900.23, with $5,142.64 in principal and $2,757.59 in interest.
Further, the father has failed to develop and maintain a parental bond with the children in a meaningful and supportive manner. The father has not contacted DFACS concerning the children since December 2000, other than the two letters from prison in 2002. Prior to the termination hearing, he had not visited with the children or had any contact with the children in over one year. He has not sent the children any letters or cards from prison.
(c) The evidence also supports the finding by the juvenile court judge that the deprivation is likely to continue.
Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue.
(Citation and punctuation omitted.) In the Interest of V.S., 230 Ga.App. 26, 29(1), 495 S.E.2d 142 (1997). The court was entitled to infer from the evidence that the same pattern of deprivation would continue if the children were reunited with their father.
While the father testified that he expected to be released on parole in August 2003; that he had been taking automotive classes in jail; that he plans to be employed after his release; and that he would be able to care for his children, these "claim[s] amount [ ] to no more than conjecture. The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) In the Interest of K. S., 250 Ga.App. 386, 389, 552 S.E.2d 441 (2001).
(d) We also find clear and convincing evidence that the children are likely to be seriously harmed by the continued deprivation.
The same circumstances that authorized the juvenile court's determination that these children were deprived due to lack of proper parental control or to parental inability and that such deprivation was likely to continue ... provided clear and convincing evidentiary support for the conclusion that such continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the children.
(Citations omitted.) In the Interest of K.S.W., 233 Ga.App. 144, 149(3), 503 S.E.2d 376 (1998).
2. Additionally, there was clear and convincing evidence termination of the father's parental rights is in the best interests of the children. "The same factors that show parental misconduct or inability can support a juvenile court's finding that termination of parental rights is in the [children's] best interest[s]." (Footnote omitted.) In the Interest of V.M. T., 243 Ga.App. 732, 736-737(3), 534 S.E.2d 452 (2000). Additionally, "the juvenile court may further consider their need for stability and the harmful effects of extended foster care." (Citation omitted.) In the Interest of C.N. S., 248 Ga.App. 84, 87, 545 S.E.2d 633 (2001). Herein, the DFACS caseworker testified that the children are doing well in foster care; that they have bonded with their foster parents; and that the foster parents have expressed an interest in adopting both children, which is the goal of DFACS if the father's parental rights are terminated. Accordingly, we conclude the evidence presented amply authorized the juvenile court to terminate the father's parental rights.
3. Lastly, the father alleges that the juvenile court erred in not placing custody of the children with him initially after the mother surrendered them to DFACS. The father argues that his marriage to the mother in 1999 rendered the children legitimate and that he appeared requesting custody the day after the children were placed into DFACS custody. "However, [the father] failed to raise this issue in the trial court, and we will not address an issue raised for the first time on appeal." (Citation omitted.) In the Interest of K.A. C., 229 Ga.App. 254, *428 255(2), 493 S.E.2d 645 (1997). Moreover, the father's failure to follow through with DFACS's initial request that he legitimate the children was not a basis for the juvenile court's decision that the father's parental rights should be terminated.
Judgment affirmed.
JOHNSON, P.J., and MIKELL, J., concur.
NOTES
[1] OCGA § 15-11-94(b)(4)(A).
[2] OCGA § 15-11-94(a); In the Interest of B. D., 236 Ga.App. 119, 511 S.E.2d 229 (1999).
[3] In addition to the present felony conviction for which the father is currently incarcerated, the father has previously entered guilty pleas to several offenses. In 1993, the father received 15 years on probation for aggravated assault. In 1999, the father received six months probation, a fine, and restitution for three counts of deposit account fraud (misdemeanor). In 2001, the father received thirty days to serve for driving with a suspended license and thirty days to serve, a fine, and forty hours community service for a violation of the Georgia Controlled Substances Actless than one ounce of marijuana.