## A05A0729. DAVIS v. RATHEL.
(614 SE2d 823)

ELLINGTON, Judge.

David Rathel filed a petition in the Superior Court of Cherokee County pursuant to OCGA §§ 19-8-3 and 19-8-10 to adopt his five-year-old stepson, L. D. In the petition, Rathel prayed for the trial court to terminate the parental rights of L. D.'s father, Larry Kevin Davis. After a hearing, the trial court terminated Davis's parental rights. Davis appeals from the denial of his motion for new trial, challenging the admission of certain evidence and contending the evidence was insufficient to support terminating his parental rights. Finding no error, we affirm.

> The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the [trial] court's disposition, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the [trial] court's factfinding and affirm unless the appellate standard is not met.

(Citation and footnote omitted.) *In the Interest of M. E. M.*, 272 Ga. App. 451 (612 SE2d 612) (2005).

Viewed in the light most favorable to the trial court's ruling, the record shows the following.

During the first three years of his marriage to L. D.'s mother, until he was jailed, Davis repeatedly beat his wife, many times in the young child's presence. To cite one egregious example, after throwing his wife to the ground and beating her, Davis interrupted the beating to wake the child, then nearly two years old, and to retrieve a handgun. Holding the child in one arm and putting the loaded gun in his wife's face, Davis told the child to "tell momma bye because daddy was fixing to kill her." Soon after that, on November 3, 1999, Davis again beat his wife in L. D.'s presence, this time ramming a broom handle between her legs. During this assault, two-year-old L. D. tried to protect his mother by covering her with his body. L. D.'s mother obtained a temporary protection order, which Davis violated one month later. On February 25, 2000, Davis was convicted of battery and cruelty to children in the second degree, in connection with the November 3, 1999 incident, as well as aggravated stalking for violating the temporary protection order, and was sentenced to twelve years, to serve seven years in prison. Davis is serving time concurrently for possession of methamphetamine.

Pursuant to the divorce decree, entered September 4, 2001, Davis was entitled to have L. D. visit him in prison two hours per quarter until the child turned five years old, four hours per quarter (essentially once per month) until he turned seven years old, and six hours per quarter thereafter until Davis was released from prison. The decree made L. D.'s mother responsible for getting the child to the prison and required her to cooperate with Davis in providing the names of the persons bringing the child for visitation to ensure that Davis was not denied his visitation. L. D.'s mother intended to have her parents accompany L. D. on his visits, but no visits took place because her parents never appeared on Davis's approved visitors list. While Davis blamed L. D.'s mother and the no-contact provisions of the protective order and the divorce decree for the lack of visitation, L. D.'s mother testified that she did all she was required to do to bring about the visits. Davis did not write to L. D. from the time he was arrested in December 1999 until February 2004; Davis testified this was because he believed he was prohibited from writing his preliterate son by the orders forbidding him to contact L. D.'s mother.

The child's mother believed that L. D. was harmed by Davis's violent conduct, observing that playful physical contact with his caregivers sometimes makes the child anxious. L. D.'s mother also testified that the child does not know who Davis is.

After hearing the evidence, the trial court found by clear and convincing evidence that Davis had in the past committed egregious acts toward L. D. of a physically and emotionally abusive nature, and had physically, mentally, and emotionally neglected L. D., through a pattern of physical violence and threats toward L. D.'s mother in the child's presence. OCGA § 15-11-94 (b) (4) (B) (iv), (v). In addition, the trial court found by clear and convincing evidence that Davis's conviction of a felony and imprisonment therefor had a demonstrable negative effect on the quality of the parent-child relationship as shown by the lack of contact and the fact that Davis was convicted of a crime of violence toward the child. OCGA § 15-11-94 (b) (4) (B) (iii). The trial court also found by clear and convincing evidence that Davis without justifiable cause had failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights to develop and maintain a parental bond with the child in a meaningful, supportive manner. OCGA § 15-11-94 (b) (4) (C). Based on the fact that Davis's acts of abuse and neglect were repeated throughout the child's first two years, until Davis was incarcerated, the trial court found that L. D.'s deprivation was likely to continue and was not likely to be remedied. The trial court found that Davis's parental misconduct and inability was and would continue to be harmful to L. D. and that it was in the child's best interest to terminate Davis's parental rights.

1. Davis contends that evidence that he had been convicted three times of simple battery of his first wife was irrelevant and "only being offered for the purpose of inflaming the mind of the trier of fact." Accordingly, Davis contends, the trial court abused its discretion in admitting the certified copies of the convictions "for the purpose of showing [a pattern of] conduct."

Georgia law provides, "[t]he general character of the parties and especially their conduct in other transactions are irrelevant matter *unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct.*" (Emphasis supplied.) OCGA § 24-2-2. As revealed by an examination of OCGA § 15-11-94, as well as legions of cases decided under it, the nature of a proceeding to terminate parental rights inherently involves character issues, specifically the respondent's ability to provide proper parental care and control. While most civil cases require the factfinder to determine the truth only with regard to the discrete transactions in issue, termination cases require the factfinder to *predict* a parent's future conduct and ability to parent. See OCGA § 15-11-94 (b) (4) (A) (ii), (iii) ("the court by order may terminate the parental rights of a parent with respect to the parent's child if . . . [t]he court determines parental misconduct or inability by finding that . . . [t]he lack of proper parental care or control by the parent in question is the cause of the child's status as deprived [and] [s]uch cause of deprivation is likely to continue or will not likely be remedied").

In this case, the trial court determined, inter alia, that Davis had emotionally abused and neglected L. D., by repeatedly beating and threatening to kill the child's mother, his wife, in the child's presence. This evidence, along with evidence that Davis also repeatedly beat his first wife, was relevant to the issue of whether this cause of L. D.'s deprivation was likely to continue. See *In the Interest of U. B.*, 246 Ga. App. 328, 329-330 (1) (540 SE2d 278) (2000) (evidence supported termination where petitioner presented evidence, inter alia, that father had beaten children's mother and directed his anger at mother in presence of children throughout their marriage); *In the Interest of J. L. M.*, 204 Ga. App. 46, 47-48 (418 SE2d 415) (1992) (evidence supported a finding of parental unfitness where father emotionally abused children by murdering children's mother and her companion within the children's hearing and then left the children alone with the bodies for six hours). Cf. *In the Interest of C. D. E.*, 248 Ga. App. 756, 767 (546 SE2d 837) (2001) (evidence failed to support finding of deprivation where petitioner failed to show that father's misdemeanor acts of domestic violence against his wife, none of which were witnessed by his children or severe enough to cause bruising, had any negative effect on his relationship with his children). Under these

circumstances, the trial court did not abuse its discretion in admitting the evidence. *In the Interest of T. B. R.*, 224 Ga. App. 470, 480 (4) (480 SE2d 901) (1997).

2. Davis contends the issues of whether he had physically abused L. D.'s mother and whether the abuse and his incarceration had a negative impact on L. D. were considered and resolved by the trial court in his favor when the trial court heard the divorce action and granted him visitation rights. As a result, Davis contends, evidence pertaining to those issues was precluded under the doctrine of res judicata. Pretermitting whether such argument is an appropriate application of the doctrine of res judicata, Davis has not fulfilled the requirement of showing that he raised this objection at trial. See Court of Appeals Rule 25 (a) (1) (requiring party to establish how enumerated errors are preserved for consideration). "All evidence is admitted as of course, unless a valid ground of objection is interposed, the burden being on the objecting party to state at the time some specific reason why it should not be admitted. A failure to make such objection will be treated as a waiver." (Citation and punctuation omitted.) *Hawkins v. State*, 230 Ga. App. 627, 629 (2) (497 SE2d 386) (1998). See also *McRae v. State*, 252 Ga. App. 100, 102-103 (3) (555 SE2d 767) (2001) ("A party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later.") (punctuation and footnote omitted). Accordingly, this argument presents nothing for our review.

3. Davis contends the evidence was insufficient to support termination of parental rights. Specifically, Davis contends that the fact of incarceration alone is insufficient to support termination of parental rights. Davis contends that he and other witnesses contradicted the evidence of domestic violence and that he offered evidence showing that his failure while incarcerated to contact and visit with L. D. was not his fault. Finally, Davis contends that he had a bond with L. D., and that Rathel has no bond with L. D., and, therefore, that termination of parental rights is not in L. D.'s best interest. The trial court heard Davis's evidence in favor of these assertions and heard Rathel's contrary evidence. It was for the trial court, and not for the appellate court, to assess the credibility of the witnesses and resolve contested factual issues. *In the Interest of H. E.*, 272 Ga. App. 604 (612 SE2d 909) (2005); *In the Interest of S. C. M. H.*, 238 Ga. App. 159, 164 (3) (517 SE2d 598) (1999). The trial court's order plainly shows that Davis's incarceration was not the sole basis of its decision that his parental rights had been lost. After reviewing the evidence, we conclude that a rational trier of fact could have found as this trial court did. Further, the trial court's findings warranted termination under OCGA § 15-11-94. *In the Interest of M. D. F.*, 270 Ga. App. 460, 463-465 (606 SE2d 658) (2004); *In the Interest of G. W. R.*, 270 Ga. App.

194, 199-200 (2) (606 SE2d 281) (2004); *In the Interest of K. W.*, 262 Ga. App. 744, 746-748 (1) (586 SE2d 423) (2003); *In the Interest of U. B.*, 246 Ga. App. at 329-330 (1). Accordingly, we affirm the trial court's order terminating Davis's parental rights.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED MAY 6, 2005.

*Flint & Connolly, John F. Connolly*, for appellant.
*Campbell & Associates, Steven M. Campbell*, for appellee.