595 S.E.2d 370 (2004)
265 Ga. App. 684
In the Interest of S.L.B., a child.
No. A03A2514.
Court of Appeals of Georgia.
February 18, 2004.
Kelley A. Dial, Cartersville, for appellant.
Thurbert E. Baker, Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., Neel & Smith, Barry S. Haney, Cartersville, for appellee.
MIKELL, Judge.
Appellant mother appeals the termination of her parental rights to S.L.B. She argues that the juvenile court erred in finding clear and convincing evidence that her parental rights have been lost. We affirm.
In considering a challenge to the sufficiency of the evidence supporting an order terminating parental rights, this Court is required to view the evidence in the light most favorable to the appellee, here the [Bartow County Department of Family and Children Services (the "Department")], and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost. We do not weigh the evidence or determine the credibility of the witnesses but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review.
(Footnotes omitted.) In the Interest of S.T., 244 Ga.App. 86, 87(1), 534 S.E.2d 813 (2000).
Viewing the evidence in favor of the juvenile court's findings, the record shows that the Department received emergency custody of S.L.B. pursuant to a shelter care order entered on June 17, 2002, after mother and child tested positive for cocaine at S.L.B.'s birth on June 14, 2002. On June 24, 2002, the juvenile court entered a "consent in lieu *371 of detention hearing order" in which appellant consented to the court's finding that S.L.B. was deprived and to the child's placement in the Department's temporary custody.
After at least two continuances, on July 25, 2002, the juvenile court conducted a provisional hearing on the Department's petition alleging that S.L.B. was deprived. Appellant did not attend the hearing; however, her counsel was present. The juvenile court entered a provisional order of adjudication and disposition finding that S.L.B. was deprived and placing her in the Department's temporary custody. In that order, the court found that appellant had last visited the child on June 18, 2002, that appellant's whereabouts were unknown, that she had a history of substance abuse, and that she had three other children who were in the custody of their paternal relatives. The provisional order became the final deprivation order of the juvenile court on October 22, 2002. Neither deprivation order was appealed.
The Department filed a petition to terminate the parental rights of appellant and S.L.B.'s biological father on February 21, 2003. The juvenile court conducted a hearing on April 14, 2003, at which appellant was present and represented by counsel. The evidence adduced at the hearing showed that the Department developed a reunification plan for appellant requiring her to address her substance abuse problems; obtain and maintain a stable, suitable home; obtain employment; improve her parenting skills; and pay child support for S.L.B. According to Erica Slocum, the Department case manager assigned to S.L.B.'s case, appellant never discussed any steps that she had taken toward compliance with her reunification plan. Slocum testified that appellant made no contact at all with the Department until December 24, 2002, when she requested a visit with S.L.B. Appellant and the biological father attended one supervised visit with the child on January 3, 2003. Neither parent ever visited S.L.B. again.
Slocum testified that appellant failed to keep the Department apprised of her whereabouts, and that at the time of the hearing, appellant was incarcerated and pregnant. According to Slocum, appellant could not tell the caseworker when she would be released from prison. Slocum testified that S.L.B. had been in the Department's custody since she was three days old; that the child had been in the same foster home since that time; that she had bonded with her foster family and was thriving; that S.L.B.'s foster parents were the only parents she had ever known; and that they desired to adopt her. Slocum opined that "it would damage" S.L.B. if she were removed from her foster home. Slocum testified that the Department investigated possible relative placements for S.L.B., and that none was suitable.
Gail McDaniel, a supervisor of the Department's foster care program, testified that S.L.B. was "[v]ery much" bonded to her foster family; that the child would "definitely" experience harm if removed from her foster home; and that it would be "terribly difficult" for S.L.B. to form a bond with her biological parents in the future, based on the amount of time she had been in foster care and on the fact that she barely knew her biological parents due to their failure to visit her.
Appellant testified at the hearing that she was currently incarcerated in the state prison system on parole violations. The record shows that appellant was convicted in March 1996 of one count of trafficking in methamphetamine and one count of possession of tools for the commission of a crime, for which she was sentenced to fifteen years, with ten to be served in prison and five on probation. After serving a portion of her sentence, appellant was released on parole. She admitted that she violated the terms of her parole by continuing to use drugs and by cohabiting with a known felon, S.L.B.'s father. Appellant testified that she did not attend any of the prior juvenile court proceedings in this case because she feared being arrested. She further testified that while her child was in Department custody, she lived at her mother's home and also with her sister, and that she was arrested at S.L.B.'s biological father's residence in February 2003. Appellant stated that she had not been employed since S.L.B.'s birth but that she received support from family members.
*372 Appellant further testified that S.L.B. was her fourth child, that two of her older children lived with paternal relatives, and that another son lived with a nonrelative family that wished to adopt him. Appellant's fifth child was due approximately ten days after the termination hearing. She did not know when she might be released from prison and testified that her "max out date" was in 2006. She testified that after the birth of her next baby, she planned to participate in an intense drug rehabilitation program in prison and hoped that she would be released early. She also planned to take parenting classes. Appellant admitted that she had made mistakes in the past and testified that she wanted to be a mother to S.L.B.
At the close of the hearing, the guardian ad litem appointed to represent S.L.B.'s interest recommended termination of both parents' rights to the child. The juvenile court entered a termination order on April 30, 2003. This appeal followed.[1]
1. Appellant contends that the court erred in finding sufficient evidence to support the termination of her parental rights. We disagree and conclude that a rational trier of fact could have found by clear and convincing evidence that appellant's rights to S.L.B. had been lost.
OCGA § 15-11-94(a) sets out a two-part procedure for termination cases. First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability, as defined in subsection (b) of the statute. Parental misconduct is found when: (1) the child is deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94(b)(4)(A)(i)-(iv). Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, "[it] shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child ..., including the need for a secure and stable home." OCGA § 15-11-94(a). See In the Interest of D.L.D., 248 Ga.App. 149, 152, 546 S.E.2d 11 (2001); In the Interest of S.T., supra.
Applying the four factors provided in OCGA § 15-11-94(b)(4)(A) to this case, we find ample evidence to support the juvenile court's finding of parental misconduct or inability. First, appellant is bound by the juvenile court's prior deprivation orders, which were never appealed. See In the Interest of J.S.G., 242 Ga.App. 387, 388(1), 529 S.E.2d 141 (2000); In the Interest of D.M.H., 242 Ga.App. 47, 48(1), 528 S.E.2d 816 (2000). Moreover, the evidence summarized above warrants a finding of deprivation even in the absence of the unappealed orders.
The second factor requires a showing that the lack of proper parental care or control caused the deprivation. OCGA § 15-11-94(b)(4)(A)(ii). Subsection (b)(4)(B) of the statute provides six conditions that the court may consider, including "[e]xcessive use of or history of chronic unrehabilitated abuse of... narcotic or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child," and "[c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship." OCGA § 15-11-94(b)(4)(B)(ii), (iii). The juvenile court properly found that both of these conditions existed in appellant's case. Contrary to appellant's argument, her promises to seek substance abuse counseling and rehabilitation in jail do not prevent the juvenile court from considering her admitted history of substance abuse and its effect on her ability to be a parent. See In the Interest of R.N., 224 Ga.App. 202, 205(2), 480 S.E.2d 243 (1997). Further, although she was incarcerated for parole violations, appellant's sentence was based on two felony convictions. The evidence *373 certainly supports a finding that appellant's imprisonment had a "demonstrable negative effect" on the quality of her relationship with S.L.B., particularly in light of the fact that she had only visited S.L.B. twice in the child's lifetime and could be incarcerated until 2006. See In the Interest of K.W., 262 Ga.App. 744, 745(1)(b), 586 S.E.2d 423 (2003) (while incarceration alone does not always compel the termination of parental rights, it supports such a ruling when the parent has made no effort to communicate with the child or to maintain a meaningful parental bond).
Next, the juvenile court properly found that the evidence satisfied the third factor, which is whether the cause of the child's deprivation is likely to continue. OCGA § 15-11-94(b)(4)(A)(iii). It is well settled that courts may consider the past conduct of a parent in determining whether the deprivation is likely to continue. In the Interest of D.S., 247 Ga.App. 569, 573, 545 S.E.2d 1 (2001); In the Interest of E.C., 225 Ga.App. 12, 16, 482 S.E.2d 522 (1997). "Such an inference is appropriate, since the juvenile court is not required to reunite [S.L.B.] with appellant in order to obtain current evidence of deprivation or neglect." (Citation omitted.) In the Interest of E.C., supra. The record demonstrates that appellant made little or no effort to develop a parental relationship with S.L.B., to provide the child with financial support, or to comply with her case plan goals. Furthermore, appellant's admitted history of substance abuse, criminal behavior, and incarceration provides evidence that S.L.B.'s deprivation is likely to continue after appellant is released from custody. See In the Interest of B.M.L., 239 Ga.App. 511, 512, 521 S.E.2d 448 (1999); In the Interest of B.C., 235 Ga.App. 152, 155(b), 508 S.E.2d 774 (1998). Additionally, the fact that appellant had three older children who were not in her care or supported by her indicates that she would likewise be unable to care for S.L.B. In the Interest of T.L.H., 240 Ga. App. 201, 203, 523 S.E.2d 50 (1999). Contrary to appellant's argument, her plans to participate in drug rehabilitation and parenting courses while in prison do not require a different result. "Although the mother contends she has now changed, judging the credibility of her good intentions was a task for the juvenile court. The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) In Interest of R.N., supra.
The same evidence demonstrating that S.L.B.'s deprivation is likely to continue also supports a finding that continued deprivation would cause serious physical, mental, or moral harm to the child. In the Interest of D.S., supra. Thus, the fourth factor in determining parental misconduct or inability was satisfied. OCGA § 15-11-94(b)(4)(A)(iv).
Finally, having found clear and convincing evidence of parental misconduct or inability, the trial court properly determined that termination of appellant's parental rights was in S.L.B.'s best interest. OCGA § 15-11-94(a). "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citation and punctuation omitted.) In the Interest of C.N.H., 238 Ga.App. 50, 53-54(2), 517 S.E.2d 589 (1999). Further, the evidence showed that S.L.B., who was approximately ten months old at the time of the hearing, had been in the care of her foster parents for her entire life, that they were the only parents she knew, that they desired to adopt her, and that she was thriving in their care. Both Slocum and McDaniel testified that it would harm S.L.B. to remove her from her foster home.
2. Appellant disputes the juvenile court's finding that she abandoned S.L.B. within the meaning of OCGA § 15-11-94(b)(3). Even assuming, arguendo, that the trial court erred in making such a finding, it would be harmless error because, as explained above, the termination of appellant's parental rights was properly based on the determination of parental misconduct or inability demonstrated by the factors in OCGA § 15-11-94(b)(4)(A); therefore, a finding that the child had been abandoned was not necessary. In the Interest of V.S., 230 Ga. App. 26, 31(2), 495 S.E.2d 142 (1997) ("It is an old and sound rule that error to be reversible *374 must be harmful.") (Citation and punctuation omitted).
Judgment affirmed.
JOHNSON, P.J., and ELDRIDGE, J., concur.
NOTES
[1] The biological father filed an appeal which was dismissed as abandoned under Court of Appeals Rule 26(a).