A04A0310. IN THE INTEREST OF T. B., a child.
(600 SE2d 432)

SMITH, Chief Judge.

R. B., the biological father of T. B., appeals an order terminating his parental rights. He contends that the trial court erred in terminating his rights without requiring the Henry County Department of Family and Children Services (DFACS) to establish any type of case plan for him in light of the requirement on DFACS to make reasonable efforts to preserve and reunify a family. He also claims that the record lacks sufficient clear and convincing evidence to enable a rational trier of fact to find a likelihood of further deprivation of T. B. and also to find actual desertion on his part accompanied by an intent to sever his parental relationship. Having determined that these claims are devoid of merit, we affirm.

In considering a challenge to the sufficiency of the evidence in a parental termination of rights case, the evidence must be reviewed in the light most favorable to the juvenile court's determination. *In the Interest of D. B.*, 242 Ga. App. 763 (531 SE2d 172) (2000). When the evidence shows that any rational trier of fact could have found by

clear and convincing evidence that the natural parent's rights have been lost, we defer to the juvenile court's factfinding. Id.

So considered, the evidence shows that for the first four years of her life, T. B. lived with both biological parents. In 1998, when T. B. was about four, her mother left home, taking T. B. with her. For the next four years, R. B., her biological father, had no contact with T. B., his daughter. In September 1999, the Whitfield County DFACS assumed custody of T. B. as a result of her mother's drug abuse and neglect of her. Between September 1999 and January 2001, T. B. remained in state custody and the whereabouts of R. B. could not be ascertained. In January 2001, T. B. was reunited with her mother. But, in November 2001, when the Henry County DFACS learned that T. B.'s mother had married a convicted sex offender, it obtained emergency custody of T. B., by then age seven. Thereafter, the Henry County DFACS filed a petition to terminate the parental rights of both of T. B.'s parents.

Before agreeing to the termination of her parental rights, T. B.'s mother admitted having had numerous drug relapses and having left T. B. in the care of T. B.'s stepfather, a convicted sex offender, during her relapses. She told caseworkers that R. B. might be in Colorado or Florida, but caseworkers still could not find him. Lacking a current address for R. B., the Henry County DFACS arranged for service by publication. The court found that substantial and reasonable efforts had been made to locate R. B.

At the termination hearing, T. B.'s caseworker described her unsuccessful efforts to find R. B. in Georgia, Colorado, and Florida. The caseworker testified that when she asked R. B. about his efforts to find his daughter, "he guessed he had really not done anything to search for her."

R. B. testified that for the first six months after T. B. and her mother left, he kept in contact with the child's maternal aunt but then lost all contact with the maternal family until July 2002. R. B. testified that on one occasion, T. B.'s mother had called him but she refused to reveal their whereabouts or to let him speak with T. B. She told R. B., however, that they were living in a trailer in Fayetteville, Georgia. R. B. admitted that he did not try to have the call traced by the phone company.

R. B. testified that T. B.'s mother was "severely" addicted to crack, and claimed, "I basically lost my whole life trying to stop her [from using drugs]." Despite his awareness of the severity of the mother's drug problem, R. B. conceded that he had done virtually nothing to find T. B. and had not filed a missing person report on his daughter. Nearly four years went by without R. B. undertaking any steps to obtain custody of T. B. or taking measures to ensure that his child was safe. In the spring of 2002, while cleaning a closet, R. B.

discovered an old list of telephone numbers. At that point, R. B. telephoned T. B.'s maternal grandmother and aunt, leaving them messages. T. B.'s maternal aunt returned his call almost immediately and told R. B. that T. B. had already been adopted. Only after that discovery did R. B. initiate contact with state authorities, telephoning DFACS in Henry County for the first time on July 9, 2002.

Records maintained by DFACS reflect that R. B. did not provide any financial support for T. B. during the 12-month period preceding the termination hearing. Nor had he visited her or made any contact with her during that period. Nor did R. B. register with the state's Putative Father Registry. Also, T. B.'s caseworker testified that "[t]he mother reported to me that she was physically abused by the father and that is why she left him." The caseworker also testified that a background check in Florida of R. B. revealed "some family violence on the record." After R. B. called DFACS in July 2002, the caseworker did not develop a reunification plan or a visitation schedule because R. B. had failed to contact T. B. for nearly four years, and she did not want to traumatize T. B. by introducing R. B. to her, only to have the juvenile court terminate R. B.'s parental rights. According to the caseworker, T. B. was living with a prospective adoptive family with whom she had lived three years earlier.

R. B. admitted that he had not seen T. B. for "[r]oughly four years" and conceded that for nearly three years he had made no effort to search through his papers for the names and telephone numbers. When asked why it had taken him three years to think of sifting through a box to look for that information, R. B. responded, "I don't know. I normally work, I don't sit around and go through boxes of papers, sir." He conceded that he had not been able to afford his child support obligations to his first wife and was still behind in those payments. R. B. claimed that for a while he had lived "in a camper in Osceola National Forest because my child support is so high." R. B. acknowledged that during the time he had been apart from T. B. "I couldn't support her." Finally, R. B. admitted pleading nolo contendere in Florida to the criminal charges of aggravated battery and family violence.

1. R. B. contends that the record lacks sufficient evidence of likelihood of further deprivation attributable to him. He claims that had DFACS developed a case plan toward reunification and allowed him the opportunity to follow that plan, he would have done so.

A juvenile court may consider past conduct of a parent in deciding whether deprivation is likely to continue. *In the Interest of D. S.*, 247 Ga. App. 569, 573 (545 SE2d 1) (2001). Because R. B. did not appeal the finding that T. B. was a deprived child, he remains bound by that finding. *In the Interest of C. M.*, 258 Ga. App. 387 (1) (574 SE2d 433) (2002). A father's failure to support his child, even in the absence of an

order directing the father to pay a specific amount for the child's support, is compelling evidence that the father is not an able parent. See *In the Interest of J. J.*, 259 Ga. App. 159, 162 (575 SE2d 921) (2003) (parent has statutory duty to support child even without a court order to do so). A father's lack of involvement in his child's welfare, leaving the child vulnerable to neglect and abuse inflicted by the mother, supports a finding that the father's failure to exercise proper care and control caused his child's deprivation. *In the Interest of D. N. M.*, 235 Ga. App. 712, 713 (510 SE2d 366) (1998).

R. B.'s past parental misconduct, including his past inability to provide emotional and financial support for T. B., his history of violence, and his lack of interest in the well-being of the child, provide support for the juvenile court's finding that T. B.'s deprivation would likely continue if she were returned to R. B. See *In the Interest of S. E. L.*, 251 Ga. App. 728, 731 (2) (c) (555 SE2d 115) (2001). Although at the time of the hearing, R. B. claimed to have steady employment and a house in which to raise T. B., R. B. admitted that he was behind in his child support obligations for his other children. "The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citations and punctuation omitted.) *In the Interest of R. N.*, 224 Ga. App. 202, 205 (2) (480 SE2d 243) (1997).

From R. B.'s past parental misconduct, the juvenile court was entitled to infer that T. B.'s deprivation was likely to continue. *In the Interest of J. M. S. M.*, 240 Ga. App. 294, 296 (523 SE2d 357) (1999). We find that the record contains sufficient clear and convincing evidence to support a finding that T. B. would suffer serious harm if returned to R. B. See *In the Interest of J. K.*, 239 Ga. App. 142, 146 (520 SE2d 19) (1999).

2. R. B. challenges the sufficiency of evidence relating to actual desertion accompanied by an intent to sever the parental relationship. He contends that he provided for T. B. "until the natural mother kidnapped the child" from his home. He claims that he "had no idea or clue as to where his child was living" and "had an emotional and financial breakdown for quite some time," after the "unfortunate abduction."

R. B.'s argument overlooks the fact that the juvenile court did not enter a finding of abandonment or desertion. Instead, in finding evidence of R. B.'s parental misconduct or inability, the court considered R. B.'s past conduct, including his criminal history. *In the Interest of A. W.*, 240 Ga. App. 259, 262-263, n. 4 (523 SE2d 88) (1999) (termination process no longer requires a finding of deprivation based on abandonment that "requires evidence of actual desertion accompanied by an intention to completely sever the parental relationship"). While it is true that T. B.'s mother left R. B. without

providing a forwarding address, R. B. compounded the situation by his own passivity. R. B. did not contact authorities in Florida or Georgia, even after T. B.'s mother told him that she and T. B. were living in Fayetteville, Georgia. And, despite knowing that T. B.'s mother had a severe problem with substance abuse, R. B. failed to exert any effort to obtain custody of T. B. or to ensure his child's safety. Instead, R. B. remained absent from T. B.'s life for nearly four years, leaving her in the care of a mother whom he termed "severely" addicted to crack and whose instability he blamed for ruining his life. Also, R. B. offered no evidence that he and T. B. shared an existing bond or that he had provided financially for her. This evidence authorized the juvenile court to find that R. B. failed to provide proper parental care or control to T. B. *In the Interest of J. M. B.*, 231 Ga. App. 875, 878 (1) (a) (501 SE2d 259) (1998) ("near abandonment" of child by parent provided clear and convincing evidence that child was without proper parental care or control).

3. R. B. contends that DFACS failed to develop a case plan and to make reasonable efforts toward reunification after DFACS learned his whereabouts and discovered his interest in the child.

DFACS is not obligated in every case to create a plan for reunification. See generally *In the Interest of V. S.*, 230 Ga. App. 26, 30-31 (495 SE2d 142) (1997); *In the Interest of A. M. B.*, 219 Ga. App. 133, 136-137 (464 SE2d 253) (1995). Nor is the juvenile court required to reunite a child with his parent in order to obtain current evidence of deprivation or neglect. *In the Interest of A. W.*, supra at 263. When the parental rights are at issue as to a parent who does not have custody of the child, the court must determine whether the child is without proper parental care and control. In doing so, the court must consider, among other things, whether that parent without justifiable cause has failed significantly for a year or more prior to the filing of the termination petition: "(i) To develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent." OCGA § 15-11-94 (b) (4) (C).

Here, DFACS filed the termination petition in May 2002, shortly after T. B.'s eighth birthday. During the year before that filing, R. B. had not developed and maintained a parental bond with T. B., nor had he provided any care or support to her. Instead, for more than three years, R. B. did not even try to contact state authorities to ascertain T. B.'s whereabouts, custody status, or well-being. In short, R. B. demonstrated no interest whatsoever in T. B. for a period well in excess of a year, until he finally made some telephone inquiries in July 2002. The record contains clear and convincing evidence that T. B.'s deprivation was caused, in part, by R. B.'s lack of proper parental

care and control. See *In the Interest of J. K.*, supra, 239 Ga. App. at 145. Such evidence also supports a finding that T. B. would suffer serious harm if returned to R. B. *In the Interest of A. C.*, 230 Ga. App. 395, 398 (496 SE2d 752) (1998). In these circumstances, DFACS was not obligated to devise a reunification plan. Compare *In the Interest of V. S.*, 249 Ga. App. 502, 503-504 (548 SE2d 490) (2001) (father made persistent effort to participate in his daughter's life and he established bond with her).

T. B. should not have to remain indefinitely in the state system, especially since she is living with foster parents who desire to adopt her. Considering the needs of the child, including the need for permanence and stability, and the evidence of R. B.'s past parental misconduct, a rational trier of fact could have found clear and convincing evidence that the termination of R. B.'s parental rights was in the child's best interest. See *In the Interest of B. L. S.*, 239 Ga. App. 771, 775-776 (521 SE2d 906) (1999).

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MAY 19, 2004.

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

*Benjamin F. Windham*, for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, James T. Chafin III*, for appellee.