636 S.E.2d 54 (2006)
In the Interest of T.J. et al., children.
No. A06A1560.
Court of Appeals of Georgia.
August 28, 2006.
*55 Richard O. Kentish Samms, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Jason S. Naunas, Assistant Attorney General, Marie Y. Watson, Hurl R. Taylor, Jr., for appellee.
BERNES, Judge.
The biological mother of T.J.J. and T.J.[1] appeals from the June 6, 2005 order entered by the Juvenile Court of DeKalb County terminating her parental rights. Appellant contends that the juvenile court erred in finding clear and convincing evidence that the cause of her children's deprivation was likely to continue and that termination of her parental rights would be in the best interests of the children. Finding no error, we affirm.
"In considering a challenge to the sufficiency of the evidence in a parental termination of rights case, the evidence must be reviewed in the light most favorable to the juvenile court's determination." In the Interest of T.B., 267 Ga.App. 484, 600 S.E.2d 432 (2004). So viewed, the record reflects that T.J.J. was born on February 16, 1999 and was placed in the protective custody of the Department of Family and Children Services ("DFCS") on that same date. The juvenile court thereafter adjudicated T.J.J. deprived and placed her in DFCS temporary custody based on its findings that appellant was 16 years old, had been in DFCS custody since 1989, and was "unable to provide adequate supervision and care for her child." Appellant's second daughter, T.J., was born on April 8, 2000 and was placed in DFCS custody for the same reasons. Both children have been in foster care for the subsequent six years, where they have required physical, occupational, and speech therapy to address delays in their development.
*56 On June 30, 2000, DFCS petitioned to terminate appellant's parental rights to both children, and the juvenile court granted the petition.[2] On appeal, this Court reversed the juvenile court after concluding that DFCS had failed to prove that the children's deprivation was likely to continue and not be remedied under OCGA § 15-11-94(b)(4)(A)(iii). In the Interest of T.J.J., 258 Ga.App. 312, 314-316(1), 574 S.E.2d 387 (2002). In reaching this result, we noted:
The cause of the deprivation was attributed to the fact that [appellant] was a juvenile, that she had been in [DFCS]'s custody since 1989, and that she was unable to provide adequate supervision and care for her child. Yet, the evidence revealed that [appellant] had very recently reached the age of 18, was no longer in [DFCS]'s custody, and had begun stabilizing her life.
Id. at 314(1), 574 S.E.2d 387. We further pointed out that appellant had established a home with the biological father, had obtained full-time employment, was in the process of completing her high school education, and had attended family planning classes. Id. at 314-315(1), 574 S.E.2d 387. While appellant had not bonded with her children, we concluded that "the circumstances that prevented that opportunity and contributed to her children's deprivation [had] changed significantly." Id. at 315(1), 574 S.E.2d 387. We therefore reversed and remanded with instructions that a reunification case plan be established, "subject to whatever disposition is warranted by future events and those occurring since the last termination hearing." Id. at 316(1), 574 S.E.2d 387.
Following remand, DFCS developed and obtained judicial approval of a case plan under which appellant was required to: (1) obtain and maintain a source of income for the children; (2) obtain and maintain stable, clean, and safe housing large enough for herself and her children; (3) obtain childcare services or assure proper supervision of the children at all times; (4) schedule, attend, and complete parenting classes; (5) contact the relevant child support enforcement agency to establish child support payments; (6) attend and complete a psychological evaluation; (7) attend and complete any prescribed counseling sessions; and (8) follow all recommendations of the licensed treatment provider. Appellant made some initial progress toward these case plan goals. Consequently, the juvenile court modified the plan to increase the number of supervised visits between appellant and her two children from one to two visits per month.
Appellant's initial progress ended, however, in the fall of 2004. In appellant's own words, "me and my husband got married October 3rd of 2004, and November came, and we just fell. We just fell. You know, the devil . . . got to us, and we just fell off, you know." On November 5, 2004, a law enforcement officer stopped appellant's husband because he was driving a vehicle with a stolen tag. Appellant and her infant son were passengers in the vehicle. The officer arrested appellant's husband for driving under the influence ("DUI") and driving with a stolen license tag. Because appellant informed the officer that her home did not have any heat, food, or electricity, the officer drove appellant and her infant son to a shelter. Appellant and her son spent the next 35 days in the shelter while her husband remained in jail.
Appellant did not notify her case manager about the DUI incident or about the fact that she and her infant son were living in a shelter. Only later did DFCS learn of what had occurred and that appellant's husband in fact had an extensive criminal history reflecting substance abuse problems, including past convictions for DUI and possession, manufacture, and distribution of a controlled substance.
Over the ensuing months, appellant failed to complete several of her case plan goals. *57 Appellant never voluntarily paid any child support, resulting in her driver's license being suspended and her income tax refund being withheld by the child support enforcement unit. Appellant, who still had not obtained a high school diploma and was now unemployed, failed to seek new employment or otherwise obtain an income source to support her two minor daughters, even though her husband's income alone was insufficient to support two additional children in their home. Appellant never lined up childcare services, which would be necessary if and when she found new employment. Furthermore, appellant failed to complete her individual counseling and parenting education sessions with Ms. Cara Brannan, the licensed social worker to whom appellant was referred by DFCS. Appellant missed 13 of the scheduled sessions, sometimes not calling Ms. Brannan until several hours later or the next day to explain why she had failed to attend.
On May 20, 2005, DFCS filed a new petition to terminate appellant's parental rights over T.J.J. and T.J. At the evidentiary hearing on the petition, it was revealed that appellant is currently serving three years' probation for conspiracy to violate the Georgia Controlled Substances Act. Appellant's former and current DFCS case managers and Ms. Brannan testified concerning appellant's repeated failure to comply with her case plan goals. Appellant's current case manager and Ms. Brannan further testified that appellant, T.J.J., and T.J. had failed to develop a meaningful parent-child bond, and that the two children were instead strongly bonded and attached to their foster parents, whom they called "Mom" and "Dad." In turn, a former foster parent who still visits the children testified that they are happy, healthy, and "continue to progress . . . mentally, physically, [and] spiritually" in their current foster care placement, and the current foster mother testified that the children have been in her and her husband's care for the past four years and that they wish to adopt them. Finally, the children's guardian ad litem recommended termination of the appellant's parental rights so that they could be adopted.
After the hearing, the juvenile court granted the petition and placed the children in the permanent custody of DFCS, with the right to proceed with adoption. This appeal followed.
1. The criteria and procedure for terminating parental rights are well settled under Georgia law.
OCGA § 15-11-94(a) sets out a two-part procedure for termination cases. First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability, as defined in subsection (b) of the statute. Parental misconduct is found when: (1) the child is deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94(b)(4)(A)(i)-(iv). Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, "(it) shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child . . ., including the need for a secure and stable home." OCGA § 15-11-94(a).
(Citations omitted.) In the Interest of S.L.B., 265 Ga.App. 684, 686-687(1), 595 S.E.2d 370 (2004).
Appellant does not challenge the juvenile court's findings as to the first, second, and fourth criteria for parental misconduct or inability. Rather, appellant limits her challenge to the court's finding as to the third criterion, whether the cause of her daughters' deprivation was likely to continue and not be remedied. See OCGA § 15-11-94(b)(4)(A)(iii). "[C]ourts may consider the past conduct of a parent in determining whether the deprivation is likely to continue." In the Interest of S.L.B., 265 Ga.App. at 688(1), 595 S.E.2d 370. "The juvenile court is not required to reunite the children with appellant in order to obtain current evidence of deprivation or neglect." (Citation and punctuation omitted.) In the Interest *58 of L.G., 273 Ga.App. 468, 474(2)(c), 615 S.E.2d 551 (2005). "[W]e defer to the juvenile court's factfinding and neither weigh the evidence nor determine witness credibility." In the Interest of K.M.C., 273 Ga.App. 276, 279(1), 614 S.E.2d 896 (2005).
Applying these principles, we conclude that the juvenile court did not err in finding that the deprivation of T.J.J. and T.J. was likely to continue and not be remedied, given appellant's ongoing failure to comply with multiple requirements of her case plan. See In the Interest of B.S., 274 Ga.App. 647, 650(2), 618 S.E.2d 695 (2005) ("Repeated failure to comply with case plan goals may show that the cause of the deprivation is likely to continue.") (footnote omitted); In the Interest of L.G., 273 Ga.App. at 474(2)(c), 615 S.E.2d 551 (same). Appellant has had over six years to complete a case plan in one iteration or another while the ultimate outcome for her minor daughters has remained in limbo. DFCS is not required to wait indefinitely for a parent to complete his or her case plan, and "[the] children should not be forced to wait any longer for a permanent home." In the Interest of T.G., 269 Ga.App. 278, 284, 603 S.E.2d 764 (2004).
More specifically, appellant's failure to voluntarily pay any child support, or to take the necessary steps to prepare financially for the addition of T.J.J. and T.J. to her household (such as by obtaining her GED, securing new employment, and lining up childcare), weighed in favor of likely continued deprivation. See In the Interest of A.H., 278 Ga. App. 192, 196(3), 628 S.E.2d 626 (2006) ("It is well established that the mother is required under Georgia law to provide for her child, financially and otherwise, with or without a court order expressly directing her to do so.") (citations omitted). See also In the Interest of T.B., 267 Ga.App. at 486-487(1), 600 S.E.2d 432 (failure to financially provide for child supports finding of likely continued deprivation); In the Interest of A.M.W., 249 Ga.App. 22, 23, 547 S.E.2d 401 (2001) (deprivation likely to continue in part because mother failed to pay child support and was dependent on husband with insufficient income to support child). That appellant would be unable to financially support T.J.J. and T.J. if they were returned to her custody was buttressed by the fact that appellant and her infant son had to stay in a shelter for over a month due to a lack of food, heat, and electricity in appellant's home. Moreover, the children's guardian ad litem recommended termination of appellant's parental rights in part on the grounds that appellant and her husband would be unable to financially cope with the addition of two more children to their household.
"[A] parent's failure to comply with the requirements of court-mandated mental health counseling or parenting education courses [also] is a factor which may be considered to determine the likelihood of whether the deprivation is likely to continue or will not likely be remedied." In the Interest of G.L.H., 209 Ga.App. 146, 150(2), 433 S.E.2d 357 (1993). According to Ms. Brannan, appellant's failure to complete her individual counseling and parenting education sessions prevented her "from really understanding who she is and how she could take care of two kids with special needs, emotionally, mental-health needs." Hence, appellant's failure to complete the individual counseling and parenting education requirements of her case plan further showed that the deprivation likely would continue. See In the Interest of T.P., 270 Ga.App. 700, 704-705(3), 608 S.E.2d 43 (2004) (juvenile court entitled to consider failure to complete parenting classes or obtain necessary parenting skills); In the Interest of K.N., 272 Ga.App. 45, 53(a)(3), 611 S.E.2d 713 (2005) (juvenile court entitled to consider parent's failure to attend and complete counseling).[3]
Finally, the fact that appellant's husband has an extensive criminal history reflecting *59 substance abuse issuesparticularly when considered in conjunction with the DUI incident and appellant's current probation sentence for a drug-related offensecounseled in favor of a finding of likely continued deprivation. See In the Interest of L.G., 273 Ga.App. at 474(2)(c), 615 S.E.2d 551 (parental substance abuse problems weighs in favor of continued deprivation); In the Interest of S.L.B., 265 Ga.App. at 688(1), 595 S.E.2d 370 (2004) (same); In the Interest of R.A.R., 259 Ga.App. 680, 686(3), 577 S.E.2d 872 (2003) (juvenile court could consider mother's association with significant other who had extensive criminal history); In the Interest of T.B.R., 224 Ga.App. 470, 474(1)(c), 480 S.E.2d 901 (1997) (children's exposure to spouse with substance abuse problem counseled in favor of finding of likely continued deprivation).
In contrast, appellant contends that the juvenile court's finding was erroneous because she has made recent strides in completing her case plan. In particular, appellant alleges that she has now completed parenting education and anger management classes, and has also attended individual counseling sessions, with a professional counselor. But, the record reflects that appellant did not notify her case manager about her recent efforts and thus did not receive instruction from a DFCS-approved provider. As such, the provider did not have access to appellant's complete DFCS file or that of her two daughters, never interviewed the daughters or saw appellant interact with them, and relied solely upon appellant for information about her background, case history, relationship with her children, and current situation. Under these circumstances, "[t]he juvenile court was entitled to assign much less weight to such assertions of sudden parental fitness when compared to the other evidence presented during the [termination] hearing." (Citations and punctuation omitted.) In the Interest of L.G., 273 Ga.App. at 474(2)(c), 615 S.E.2d 551. See also In the Interest of D.E., 269 Ga.App. 753, 756(1), 605 S.E.2d 394 (2004) ("A [juvenile] court may find that a parent's conduct over the years is a better predictor of future conduct than a few months of stability.") (footnote omitted).
It was approximately four years ago that this Court reversed the juvenile court's order terminating appellant's parental rights and remanded the case so that appellant could have another opportunity to comply with a reunification case plan. Rather than viewing the prior termination as a "wake-up call" and availing herself of this second opportunity, appellant failed to voluntarily pay any child support, failed to prepare herself financially for the potential addition of two children to her household, failed to complete her individual counseling and parenting education sessions with a DFCS-approved professional counselor, and now risks exposing her children to the dire effects of parental substance abuse. Accordingly, the juvenile court was entitled to find that the deprivation was likely to continue and not be remedied, appellant's alleged recent efforts at improvement notwithstanding. See In the Interest of L.G., 273 Ga.App. at 475(2)(c), 615 S.E.2d 551.
2. In a single footnote, appellant also contends that the juvenile court erred in finding clear and convincing evidence that termination of her parental rights would be in the best interest of T.J.J. and T.J. However, "[a] party cannot expand his enumerations of error through argument or citation in his brief." (Punctuation omitted.) Robertson v. State, 277 Ga.App. 231, 233(1), n. 5, 626 S.E.2d 206 (2006). See also Felix v. State, 271 Ga. 534, 539, n. 6, 523 S.E.2d 1 (1999). Moreover, appellant provides no legal argument or citations to the record in support of her contention, and, therefore, has abandoned it on appeal. Court of Appeals Rule 25(c)(2), (3)(i). In any event, this Court has previously ruled that where, as here, the "evidence showed no parental bond between parent and child, the child had adapted well to foster care, and the foster parent wished to adopt, this was sufficient to support the juvenile court's conclusion that continued deprivation was likely to harm the child[ren]." In the Interest of L.G., 273 Ga.App. at 475-476(2)(d), (e), 615 S.E.2d 551. See also In the Interest of J.K., 239 Ga.App. 142, 146(1), 520 S.E.2d 19 (1999). The same testimony and documentary evidence likewise supported the juvenile court's conclusion that termination would be in the children's best *60 interests. See In the Interest of L.G., 273 Ga.App. at 475-476(2)(d), (e), 615 S.E.2d 551.
Judgment affirmed.
ANDREWS, P.J., and BARNES, J., concur.
NOTES
[1] Because both children have the same initials, we will refer to the older child as "T.J.J." and the younger child as "T.J."
[2] The juvenile court also granted DFCS's petition to terminate the parental rights of the biological father. On appeal, we affirmed the termination of his parental rights with respect to T.J., but reversed with respect to T.J.J. In the Interest of T.J.J., 258 Ga.App. 312, 316-317(3), 574 S.E.2d 387 (2002). DFCS subsequently petitioned again for the termination of the father's parental rights with respect to T.J.J., and the juvenile court granted the petition in a September 1, 2005 order. That order is not at issue in this appeal.
[3] Appellant contends that she did not complete the counseling and parenting education sessions because of pregnancy sickness and because she lived far away from Ms. Brannan's office without access to reliable transportation. Significantly, however, DFCS had previously referred appellant to a treatment provider closer to her home, and appellant unilaterally chose not to continue with that provider and never asked her DFCS case manager for another referral. Moreover, Ms. Brannan took several steps to accommodate appellant, including moving their appointments to a second office closer to appellant's home and proposing alternative modes of transportation.