675 S.E.2d 619 (2009)
In the Interest of S.H., a child.
No. A08A1615.
Court of Appeals of Georgia.
March 20, 2009.
*620 Hurl R. Taylor Jr., Chicago, IL, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Cynthia E. Roberts-Emory, Atlanta, for appellee.
BARNES, Judge.
Appellant, the mother of S.H., appeals from the order of the DeKalb County Juvenile Court terminating her parental rights. In her sole enumeration of error, the mother contends that the State failed to present clear and convincing evidence that the cause of the deprivation was likely to continue and not be remedied to support the termination. For the reasons that follow, we affirm.
On appeal from a termination order, this Court views the evidence in the light most favorable to the Department and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost. We do not weigh the evidence or determine the credibility of witnesses, but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review.
(Footnote omitted.) In the Interest of T.W.O., 283 Ga.App. 771, 643 S.E.2d 255 (2007).
So viewed, the evidence shows that the mother tested positive for cocaine when she delivered S.H. on January 2, 2005. S.H. was placed in protective care under the custody of the Department of Family and Children Services ("DFACS") two days later, on January 4, 2005, because there was reasonable cause to believe that the child's "health or safety [was] in imminent danger." The juvenile court subsequently entered a shelter care order awarding custody to DFACS, and DFACS filed a deprivation petition on January 31, 2005, alleging the mother's cocaine use, and also noting that the infant had tested positive at birth for cocaine.
The mother was given a case plan on February 15, 2005, which reflected an overall goal of reunification. She was required to, among other things, obtain a substance abuse assessment and complete drug and alcohol treatment, submit to random drug screens and test negative for six consecutive months, and complete parenting classes. The mother had earlier stipulated to the finding of deprivation, and on March 9, 2005, following a hearing,[1] the juvenile court entered a provisional order of disposition placing the infant in temporary custody of DFACS.[2]
An April 27, 2005 report by the child advocate noted that S.H.'s feeding difficulties might possibly be the result of a neurological disorder, and also that the infant had not been visited by any relatives since entering foster care. The mother had moved to Austell *621 in Cobb County with her four other children and was living with the maternal grandmother. Thereafter, the DeKalb Juvenile Court attempted to transfer S.H.'s case to Cobb County so that the mother could complete her reunification plan under the supervision of Cobb's DFACS, but the Cobb juvenile court declined the transfer upon finding that the mother intended to retain residency in DeKalb, and that the transfer documents did not show a sufficient adjudication of deprivation by clear and convincing evidence. A subsequent deprivation ordered filed on November 21, 2005, nunc pro tunc as of January 31, 2005, found S.H. deprived because of the mother's "substance abuse and DFACS history." The order was not appealed.
A January 26, 2006 order extending custody to DFACS following the lapse of the temporary custody order, noted that the mother had not obtained drug treatment, did not have stable housing or employment, and was not able to care for S.H. On February 6, 2006, DFACS filed another deprivation petition alleging that for over one year the mother had failed to complete her case plan goals, and even though she was referred for drug treatment and parenting classes, she had made no progress on either goal. The mother also had not obtained stable housing or employment. S.H.'s custody was extended with DFACS, and on August 15, 2006, nunc pro tunc February 13, 2006, the juvenile court found the infant to be deprived because of the mother's failure to complete her case goal plans. The mother was not present for the hearing, and the order was not appealed. Following a September 25, 2006 judicial review hearing, at which the mother was present and represented by counsel, the juvenile court ordered DFACS to proceed with termination of the parental rights to the now eighteen-month-old child.
On January 5, 2007, DFACS filed a petition to terminate the parental rights of the mother and father, alleging that the mother failed to maintain a relationship with S.H. and also had failed to support the child. DFACS also filed another petition for an extension of custody for S.H., which the juvenile court granted after finding that the mother had failed to make any substantial progress on her case plan goals. In March 2007, another case plan was developed for the mother, but the overall goal was for termination and adoption. It was noted that the child could be exposed to drug abuse if returned to the mother, and that the mother had not completed any of the goals of her earlier case plan.
A termination hearing was held on April 27, 2007. The mother was present and represented by counsel. The mother's caseworker testified that she first met the mother in September 2006, and had asked her to meet later to review the March 2006 case plan with her, and also to arrange for the mother to visit S.H. The mother, however, never met with the caseworker to set up visitation with the child. The caseworker testified that she did not see the mother again until January 2007, but that she had attempted to contact her on numerous occasions. She said that she had received calls from the maternal grandmother, but not from the mother. She also testified regarding the close bond between S.H. and her foster parents, who want to adopt her. The caseworker testified that she had observed the mother with S.H., that there was no bond between the two, and that the mother had visited the child approximately ten times in the more than two years S.H. was in foster care. Four of the visits were within the two months preceding the termination hearing. The child was placed with the foster parents at three days old, and has been with the family continuously. The caseworker testified that the mother had offered no proof of housing, job possibilities, or any means of support for S.H.
S.H.'s child placement specialist, who specialized in medically fragile children, testified that S.H. was having her medical and developmental needs met, and now appeared well-adjusted. At birth, among her other issues, S.H. was having trouble with her swallowing reflexes, taking medication because she was at risk for HIV, and she also had an intestinal tract problem. Though she is still receiving treatment for the intestinal problem, her swallowing and sucking reflexes have improved and she has tested negative for HIV. The specialist testified that when she first saw S.H., "[s]he never maintained eye contact, *622 she wouldn't connect when you were trying to engage her in anything, and they've really kind of worked a lot on that with her and she's a lot more sociable now." The foster mother testified that when S.H. was initially placed with her, she would frequently cry, scream, and yell, but that she had calmed down significantly.
At the time of the termination hearing, the mother had been enrolled for approximately five months at a treatment facility. She had completed three of the program's four stages, and would be allowed to look for a job after completing the last stage. The mother also testified that she was taking parenting classes, which she would complete at the end of the program, and that her caseworker never told her that she needed to pay child support.
1. In order for the juvenile court to terminate a parent's rights to her child, it must first find clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-94(a). To establish parental misconduct or inability, the following four factors must be proved: "(1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm." In the Interest of L.G., 273 Ga.App. 468, 470-471(2), 615 S.E.2d 551 (2005); OCGA § 15-11-94(b)(4)(A)(i)-(iv). Once these four factors are established, the juvenile court then determines "whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home." In the Interest of B.W., 287 Ga.App. 54, 62, 651 S.E.2d 332 (2007); OCGA § 15-11-94(a).
The mother contends that the evidence was insufficient to support the juvenile court's finding that S.H.'s deprivation was likely to continue and not be remedied. See OCGA § 15-11-94(b)(4)(A)(iii). She argues that the cause of the deprivation is not likely to continue because she "has found [a] suitable drug treatment program, attended parenting classes, and has identified a source of possible employment . . . as well as child care facilities."
It is well established that a juvenile court can consider a parent's past conduct as evidence of present unfitness so as to conclude that the parent's persistent deprivation of his or her child is likely to continue. In the Interest of E.J., 284 Ga.App. 814, 817, 644 S.E.2d 906 (2007); In the Interest of A.M., 275 Ga.App. 630, 633(2), 621 S.E.2d 567 (2005). "The juvenile court is not required to reunite the children with [a parent] in order to obtain current evidence of deprivation or neglect." (Citation and punctuation omitted.) In the Interest of T.J., 281 Ga.App. 308, 312(1), 636 S.E.2d 54 (2006). Contrary to the mother's assertions, the evidence supports the juvenile court's finding that the children's deprivation was likely to continue and not be remedied.
At the time of the termination hearing, appellant had been given over two years to comply with her case plan. While at the time of the termination she was in the process of completing a drug treatment program, she had not obtained stable housing or employment, nor had she provided any financial support toward the child's care. See In the Interest of B.S., 274 Ga.App. 647, 650-651(2), 618 S.E.2d 695 (2005) ("Repeated failure to comply with case plan goals may show that the cause of the deprivation is likely to continue.") (footnote omitted); In the Interest of T.B., 267 Ga.App. 484, 486-487(1), 600 S.E.2d 432 (2004) (a parent's failure to pay child support is compelling evidence that he or she is not an able parent).
Furthermore, the mother had six other biological children, none of them in her care. Four children were staying with her grandmother, another child was living with his father, and she was working on another case plan for a child in the custody of the Cobb County DFACS because, like S.H., she was born with cocaine in her system. The fact that a mother has other children not in her care and not supported by her bolsters the conclusion that she will be unable to support and care for another child. See In the Interest of S.L.B., 265 Ga.App. 684, 688(1), 595 S.E.2d 370 (2004). Although the mother argues that she has demonstrated concern for *623 the welfare of her child through her present efforts, "judging the credibility of her good intentions was a task for the juvenile court." (Citation omitted.) In the Interest of R.S.H., 269 Ga.App. 292, 297(a), 603 S.E.2d 675 (2004).
We find that the evidence supports the juvenile court's finding by clear and convincing evidence that the causes of the child's deprivation are likely to continue.
2. The same factors that show parental misconduct or inability may also support a finding that termination is in the child's best interest. See In the Interest of A.R.A.S., 278 Ga.App. 608, 614(2)(d), 629 S.E.2d 822 (2006).
Further, given the mother's history of substance abuse, and inability to care for any of her seven children, as well as the bond the child has developed with her foster family as the only family she has known, and their desire to adopt her, the juvenile court did not abuse its discretion in finding that termination of appellant's parental rights served the child's best interest. See In the Interest of H.E.M.O., 281 Ga.App. 281, 288(2), 636 S.E.2d 47 (2006).
Judgment affirmed.
JOHNSON, P.J., and PHIPPS, J., concur.
NOTES
[1] The deprivation hearing referenced in the order was not included in the record.
[2] The order was final as to the mother, but provisional for the father who was incarcerated at the time of the hearing.