A09A1330. IN THE INTEREST OF J. J. et al., children.
(682 SE2d 349)

BERNES, Judge.

Following the grant of her application for discretionary appeal, the biological mother of J. G. J. and J. W. J. appeals from the juvenile court's order terminating her parental rights.[1] She contends that the juvenile court erred by refusing to provide a copy of the termination hearing transcript to her counsel for use in her application for discretionary appeal. She further contends that there was insufficient evidence that the children were deprived or that the deprivation was likely to continue, and that inadequate consideration was given as to whether the children should be placed with the paternal grandmother. For the reasons discussed below, we affirm.

On appeal from an order terminating parental rights, we review the evidence in the light most favorable to the juvenile court's

---

[1] The juvenile court also terminated the parental rights of the father, but he is not a party to this appeal.

determination. *In the Interest of T. J.*, 281 Ga. App. 308 (636 SE2d 54) (2006). So viewed, the evidence showed that on May 24, 2006, the minor children J. G. J. and J. W. J. came into the emergency care of the Cherokee County Department of Family and Children Services ("DFCS") after their paternal grandmother reported to the police that the mother and father were abusing illegal drugs. The grandmother suspected illegal drug activity in part because the parents had left J. G. J. and the grandmother at Wal-Mart at 10:00 p.m. and had not returned until the following morning. At the time of their removal from their parents' custody, J. G. J. was four years old and J. W. J. was one year old. The family was living in one-half of a mobile home with one room and two beds and lacked their own means of transportation. The children appeared dirty and hungry.

Both parents admitted to recent use of cocaine, and the mother tested positive for marijuana and cocaine at the inception of the case. The mother later admitted that she had a history of using marijuana that dated back several years. The father by his own admission had a chronic unrehabilitated drug and alcohol problem.

The juvenile court entered an order finding the children deprived based upon substance abuse by the parents, lack of stable and suitable housing, and physical neglect. The mother consented to the order finding the children deprived and later consented to an extension order that included the same finding. She did not appeal either order.

DFCS developed a reunification case plan that was reviewed by the mother. Among other things, the plan required the mother to obtain and maintain a stable source of income to support her children; pay $20 per month in child support; obtain and maintain stable housing adequate for herself and her children; obtain a substance abuse assessment and follow all treatment recommendations; submit to random drug screens; and remain drug free for six consecutive months. The juvenile court entered a supplemental order incorporating the terms of the case plan.

Initially, DFCS placed the children with the paternal grandmother, but the grandmother surrendered them to DFCS the next day after the case manager learned that the grandmother lived in a tractor-trailer that she drove cross-country. While the grandmother later purchased a home, she ultimately was not approved as a placement for the children because of her job as a long-distance truck driver that kept her on the road for three months at a time. After the grandmother surrendered the children back to DFCS, the children were placed in foster care, where they remained as the mother attempted to comply with her reunification case plan.

After more than a year had passed and the mother still had not completed her case plan, DFCS petitioned to terminate her parental

rights in August 2007. The hearing on the termination petition was conducted in February 2008. The DFCS case manager, the professional counselor who assessed the mother, and the mother herself testified at the hearing, among other witnesses.

The DFCS case manager testified that the mother had failed to complete many of her case plan goals despite repeated efforts by DFCS to assist her. Specifically, the mother had not achieved stable employment and had failed to pay child support. The mother had started several different jobs over the course of time her children had been in DFCS custody, but she never remained at any one job for more than a few months. At the time of the hearing, the mother was unemployed. Nor could the mother rely upon a steady income from the father, whose own work history was sporadic and who had been employed in a new waiter job for a little over a month. Additionally, the mother had paid a total of only $40 in child support since her children entered foster care.

The case manager further testified that the mother had not achieved stable housing adequate for herself and her children. The mother and father had lived at six different residences since the children had been placed in DFCS custody, none of which had been approved for children. Two weeks before the hearing, the mother signed a month-to-month lease and moved into a private residence with the father, but the case manager opined that the residence would not be approved for children based on its outside appearance and the extensive amount of debris and overgrown vegetation surrounding it.

With respect to substance abuse issues, the case manager testified that the mother did not complete a substance abuse assessment until six months after the children entered foster care. The professional counselor who performed the assessment recommended that the mother participate in 12 substance abuse group sessions and submit to random drug screens at least twice per month. According to the case manager, the mother had only attended two group sessions. Furthermore, while the mother had consistent negative drug screen results when she agreed to cooperate, she had refused to submit to hair follicle tests on several occasions. The mother also continued to reside with the father, who had tested positive for cocaine, marijuana, and methamphetamine while the children were in foster care, and who tested positive for marijuana on the day of the termination hearing.

Lastly, the case manager advised that the children had been in the same foster care placement since October 2006. The children were doing well and their foster parents wished to adopt them. Based on her training and experience, the case manager believed that termination of parental rights was in the children's best interests

because they needed stability and parents who could provide for their basic needs.

The professional counselor who performed the substance abuse assessment testified that his treatment recommendations were based upon the mother's admission to a history of marijuana use and to having tested positive for marijuana and cocaine at the beginning of the case. He also opined that a refusal to submit to drug screens indicates resistance to treatment and the need for additional intervention to prevent relapse. According to the counselor, a refusal to submit to a drug screen is normally documented as a "dirty drug screen" because it suggests that the person knew that he or she would test positive and was actively seeking to hide that result.

The mother testified at the hearing and admitted that she had smoked marijuana spiked with cocaine at the time the children were taken into DFCS custody. The mother also conceded that she had been recently terminated from her job for using inappropriate language, that she was currently unemployed, and that she had not paid any child support in over a year. As to housing, the mother conceded that it had been four years since she "actually had housing for more than a few months[ ] that [she] actually maintained and paid rent on." Although the mother further testified that she planned to separate from the father, she admitted that she was currently living with him despite her awareness of his ongoing substance abuse problem and his repeated failures to seek treatment. Moreover, the mother admitted to refusing to take hair follicle tests despite her knowledge that each refusal would be treated by DFCS as a positive test result, although she claimed that she refused the tests because of anxiety over having her hair cut. Finally, while the mother alleged that she had completed 12 substance abuse group sessions at a medical facility in south Georgia, there was no verification or confirmation of her attendance at such sessions in the correspondence from that facility which she introduced into evidence at the hearing. Moreover, the correspondence indicated that the mother's treatment at the facility had not been completed.

After hearing the testimony and admitting a certified copy of the prior record in the case, the juvenile court terminated the mother's parental rights and ordered that the children be placed in the permanent custody of DFCS for the purpose of adoption. Following the denial of her motion for new trial, the mother filed an application for discretionary appeal, which we granted.[2] This appeal followed.

---

[2] At the time the application was granted, this Court interpreted OCGA § 5-6-35 (a) (12) to require an application for discretionary appeal in cases where, as here, the order terminating parental rights was entered on or after January 1, 2008. But the Supreme Court of Georgia subsequently ruled that an application for discretionary appeal is required only in

1. The mother first argues that the juvenile court erred by refusing to provide a copy of the termination hearing transcript to her counsel for use in her application for discretionary appeal. In making this argument, the mother provides no citations to the record to support her position. We have independently reviewed the record and likewise have found no support for her argument that the juvenile court refused to provide a transcript until the discretionary appeal was accepted. Furthermore, even if the juvenile court had refused to provide a transcript, and even if the refusal was error, the mother cannot show harm resulting from the refusal given that we granted her application for discretionary appeal. Under these circumstances, we discern no ground for reversal. See generally *In the Interest of B. B.*, 267 Ga. App. 360, 361 (1) (599 SE2d 304) (2004) ("In order for error to warrant reversal, an appellant must show harm as well as error.") (footnote omitted); *In the Interest of C. M.*, 258 Ga. App. 387, 388 (2) (574 SE2d 433) (2002) (appellant cannot rely merely upon argument but must show error in the record).

2. The mother next contends that there was insufficient evidence to support the termination of her parental rights. Before terminating a parent's rights to his or her child, the juvenile court must follow the two-prong test set out in OCGA § 15-11-94.

> In the first prong, the court must decide whether there is present clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-94 (a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A). In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child. [OCGA § 15-11-94 (a).]

(Citation omitted.) *In the Interest of R. N. H.*, 286 Ga. App. 737, 739-740 (650 SE2d 397) (2007). With respect to this test, we defer to the juvenile court's factfinding, weighing of the evidence, and

cases where the petition to terminate parental rights was filed on or after January 1, 2008. See *In the Interest of K. R.*, 285 Ga. 155 (674 SE2d 288) (2009). See also OCGA § 5-6-35 (a) (12); Ga. L. 2007, p. 554, §§ 3, 8. Because the termination petition in this case was filed in August 2007, the mother was entitled to file a direct appeal under *In the Interest of K. R.* Nevertheless, the issue is moot in light of our grant of her application for discretionary appeal.

credibility determinations, and our review is limited to addressing "whether any rational trier of fact could have found by clear and convincing evidence that the mother's right to custody should have been terminated." (Citation omitted.) *In the Interest of K. N.*, 272 Ga. App. 45 (611 SE2d 713) (2005).

Here, the mother argues that there was insufficient evidence that her children were presently deprived and that the deprivation was likely to continue and not be remedied because she substantially completed her case plan. We disagree.

(a) *The Children Must Be Deprived.* Clear and convincing evidence supported the finding that the children were presently deprived. As previously noted, the mother consented to the juvenile court's order finding that the children were deprived based upon substance abuse, lack of stable and suitable housing, and physical neglect. She thereafter consented to a finding of continued deprivation and 12-month extension of DFCS custody. The mother did not appeal from these prior orders, and, as explained below, DFCS has demonstrated that the conditions upon which these findings of deprivation were based still existed at the time of the termination hearing. Hence, the mother's failure to appeal the deprivation orders precludes her from contesting the juvenile court's finding of deprivation. See *In the Interest of R. N. H.*, 286 Ga. App. at 740 (1) (a); *In the Interest of T. P.*, 270 Ga. App. 700, 704 (1) (608 SE2d 43) (2004).

(b) *Cause of the Deprivation Must Be Likely To Continue.* Clear and convincing evidence likewise supported the finding that the deprivation was likely to continue and would not be remedied. By the time of the termination hearing, the mother had been given almost two years to complete her case plan. Nevertheless, there was evidence that the mother still had not secured stable housing or employment, had paid no more than $40 in child support, and had attended just two of the twelve recommended substance abuse group sessions. See *In the Interest of S. H.*, 296 Ga. App. 768, 771 (1) (675 SE2d 619) (2009) (lack of stable housing and employment, failure to pay child support, and failure to complete drug treatment program supported finding of continued deprivation); *In the Interest of T. J.*, 281 Ga. App. at 312 (1) (failure to pay child support, or to prepare financially for the children's addition to the household by obtaining stable employment, weighed in favor of continued deprivation); *In the Interest of A. K.*, 272 Ga. App. 429, 436 (1) (c) (612 SE2d 581) (2005) ("Repeated failure to comply with case plan goals may show that the cause of the deprivation is likely to continue.") (footnote omitted). Furthermore, the mother's repeated refusal to submit to drug screens "showed disregard for her reunification case plan," *In the Interest of D. W.*, 294 Ga. App. 89, 92 (1) (c) (668 SE2d 533) (2008), and in the opinion of the testifying professional counselor,

indicated resistance to treatment and the need for additional intervention to prevent relapse. Finally, the fact that the mother continued to live with the father who had not undergone treatment for his chronic drug and alcohol abuse problem, and had failed to insist that he undergo such treatment, counseled in favor of likely continued deprivation. See *In the Interest of A. D. M.*, 288 Ga. App. 757, 765 (3) (655 SE2d 336) (2007); *In the Interest of T. J.*, 281 Ga. App. at 313 (1).

While there was conflicting evidence on several of these points, "it is the role of the juvenile court, not this Court, to weigh the evidence and resolve conflicts therein." (Citations and punctuation omitted.) *In the Interest of K. C. W.*, 297 Ga. App. 714, 719 (2) (b), n. 4 (678 SE2d 343) (2009). And although the mother testified that her intention was to separate from her husband until he received proper treatment, that she had "full confidence that [she] could get another job quickly," and that she planned to continue repairing her current residence, "judging the credibility of her good intentions was a task for the juvenile court." (Citation omitted.) *In the Interest of R. S. H.*, 269 Ga. App. 292, 297 (a) (603 SE2d 675) (2004). Accordingly, the juvenile court was entitled to conclude that the deprivation was likely to continue.

3. Finally, the mother contends that the juvenile court erred by awarding permanent custody of the children to DFCS for purposes of adoption because neither the court nor DFCS adequately considered whether the children should be placed with the paternal grandmother. We do not agree.

After terminating a parent's rights to his or her child, the juvenile court should

> first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family if such a person is willing and, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child, if the court determines such placement is the most appropriate for and in the best interest of the child. . . .

OCGA § 15-11-103 (a) (1). Because "there is no conclusive preference given to relatives, the juvenile court is afforded wide discretion to determine whether a child should be placed with a relative or kept in a stable foster home." (Citation and punctuation omitted.) *In the Interest of K. W.*, 283 Ga. App. 398, 402-403 (2) (641 SE2d 598) (2007).

In the present case, the evidence showed that DFCS had investigated the paternal grandmother as a possible placement for

the children but had not approved her because of her current job obligations. In this respect, the paternal grandmother testified that she was a long-distance truck driver who was away from home for months at a time. Although she claimed that she would quit her truck driving job if the children were placed in her custody, she had yet to do so even though the children had been in DFCS custody for almost two years. Moreover, the children had already been placed with the grandmother once before, but a day later she had surrendered them back to DFCS. On the other hand, the children had been in the same foster home since October 2006 and had bonded with their foster parents, who wished to adopt them. In light of this evidence, the juvenile court did not abuse its discretion in determining that the children should be kept in their stable foster home rather than placed with the paternal grandmother. See generally *In the Interest of K. W.*, 283 Ga. App. at 402-403 (2); *In the Interest of G. C.*, 263 Ga. App. 503, 506-507 (2) (588 SE2d 297) (2003).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JULY 17, 2009.

*Flint, Connolly & Walker, John F. Connolly*, for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Susan C. Stanton, Richard A. Jones*, for appellee.